UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALBERT NORMAN PIERRE, SR.                          CIVIL ACTION

VERSUS                                             NO. 16-1336

DARREL VANNOY                                      SECTION "A"(2)

## REPORT AND RECOMMENDATION

This troubling matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C.A. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be DENIED AND DISMISSED WITH PREJUDICE.

## I.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2007, a Terrebonne Parish, Louisiana, grand jury returned an indictment against petitioner, Albert N. Pierre, Sr., charging him with the aggravated rape

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court may hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

of a female juvenile, identified as "C.C.," in violation of La. Rev. Stat. § 14.42A(4).[2]

Trial commenced on June 17, 2008, with voir dire examination of potential jurors.[3]  The

Louisiana Court of Appeal for the First Circuit summarized the facts of the case

established at trial as follows:

> C.C. was born [in] . . . 1994 . . . .  [When] she was approximately six years old[,] . . . C.C. moved in with [Gayle] Aucoin [her paternal grandmother], who shared a trailer with the defendant on Shrimper's Row in Dulac.  Aucoin and the defendant were not married.
>
> According to C.C, the trailer was a two-bedroom trailer, but one of the bedrooms was for "storage," so she slept in the same bed as Aucoin and the defendant. C.C. stated that oftentimes Aucoin would complain of back problems and leave the bedroom in order to sleep on the sofa in the living room. During these times, the defendant would touch C.C. on her breasts and vaginal area on top of her clothing. As C.C. grew older, the defendant's actions became more frequent and the touching progressed to where the defendant would place his hands underneath C.C.'s clothing.
>
> After approximately two years of living in the trailer, Aucoin, the defendant, and C.C. moved to a residence also located on Shrimper's Row.  According to C.C, when she was approximately eight years old, the defendant escalated his sexual activity toward her and began putting his mouth on her vagina.  C.C. testified that the defendant did this approximately three to four times a week and it made her feel "disgusting."  C.C. stated that the defendant told her he was "teaching" her.
>
> When C.C. was approximately eleven years old, the defendant began vaginally raping her.  C.C. testified that she felt the defendant put his penis inside of her vagina.  According to C.C, these rapes would often occur when she was alone with the defendant on fishing trips or in the back of his truck.
>
> C.C. testified that she was afraid to tell anyone what the defendant was doing because he had threatened to hit her with things.  C.C. described how, during the

---

[2] State Rec. Vol. 1 of 7 (Indictment, Minute Entry of Return of Indictment, Case No. 07-503, 180, 32nd Judicial District Court, Parish of Terrebonne, State of Louisiana).

[3] State Rec. Vol. 3 of 7 at p. 1051 (Trial Trans. at p. 41).

time she lived with the defendant, he became increasingly possessive and reluctant to allow her to visit [other people] . . . . C.C. further said that when she asked the defendant for money, he would give her $100.00 at a time. C.C. testified that the defendant bought her expensive gifts, usually given in close temporal proximity to the episodes of sexual activity. C.C. stated that she felt as if the defendant were giving her these things to keep her quiet. . . .

C.C. testified that as she got older, she would tell the defendant to stop the sexual activity, and would even push against him, but was reluctant to resist too much because she feared a physical confrontation with the defendant. Because she wanted the abuse to stop and wanted to change schools, C.C. decided in the fall of 2006 to live with her father, Todd Crews, and her stepmother, Angela Crews.

On Sunday, October 1, 2006, while C.C. was at her father's residence, the defendant called to complain that C.C. was there. Angela Crews had placed the defendant on speakerphone and C.C. heard the defendant state that he did not want her to live there because Todd was a child molester. At that point, C.C. blurted out, "You have the room to talk." When the call ended, Angela questioned C.C. about whether the defendant had ever done anything to her. C.C. initially did not respond, but a short time later admitted to Austin Neil, her younger step-brother, that the defendant had been abusing her. Austin relayed the information to his mother, Angela Crews, and C.C. finally revealed what the defendant had been doing for the previous six years.

The following day, Todd and Angela Crews took C.C. to the Terrebonne Parish Sheriff's Department to report the allegations. . . .

Later that day, Detective Pitre and Detective Joey Quinn arrived at the defendant's residence. Defendant immediately told the officers that he knew why they were there and claimed Aucoin was "trying to put a molestation charge on him" regarding C.C. Detective Pitre testified that the defendant never alleged C.C. had fabricated the abuse complaint in an effort to live with her father. . . .

Dana Davis was accepted as an expert clinical social worker and psychotherapist. Davis testified she is affiliated with the Terrebonne Parish Children's Advocacy Center. Davis testified that she first saw C.C. on October 17, 2006, and treated her at least once a month for the following eighteen months. Davis described how during the course of her counseling of C.C., she observed cut marks on C.C.'s arms that were indicative of suicidal ideation and recommended that C.C. be hospitalized at Children's Hospital in New Orleans. C.C. was treated for two weeks as an inpatient at Children's Hospital. At trial, C.C. indicated she no longer thought about suicide.

3

The State also introduced testimony from [Paula] Martinez [an aunt who was C.C.'s guardian], who corroborated C.C.'s testimony that the defendant became very possessive of C.C. and would not allow her to spend extended periods of time visiting either her or C.C.'s father. . . .

The defense presented testimony from Aucoin. According to Aucoin, C.C. never slept in the same bed as the defendant . . . . Aucoin denied seeing any behavior on C.C.'s part that would lead her to suspect the defendant was abusing her. . . .

Defendant testified that C.C. always slept in her own room in her own bed and never slept with him. According to the defendant, when C.C. was around ten years old, she began hitting her grandmother and would not listen to them. . . .

Defendant denied engaging in any sexual behavior with C.C. and acknowledged that on the same day C.C. reported her allegations against him to the police, he had spoken with Cheryl Carter, an assistant district attorney, regarding C.C.'s ungovernable behavior and what steps were available to him.

State v. Pierre, No. 2009 KA 0454, 2009 WL 3162246, at *1-3 (La. App. 1st Cir. 2009).

On June 20, 2008, the jury returned a guilty verdict as to the aggravated rape charge.[4] "The trial court sentenced the defendant to a term of life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence."[5]

On direct appeal, the Louisiana First Circuit affirmed both the conviction and the sentence in its fully reasoned opinion issued on September 11, 2009.[6] On April 16, 2010, the Louisiana Supreme Court denied writs on direct review.[7]

---

[4] State Rec. Vol. 4 of 7 at pp. 2043-45 (Trial Trans. at p. 1033-35).

[5] State v. Pierre, 2009 WL 3162246, at *1.

[6] Id.

[7] State v. Pierre, 31 So. 3d 1054 (La. 2010).

However, <u>after</u> trial and while Pierre's appeal was pending, events occurred that amounted to a recanting of a significant aspect of C.C.'s trial testimony and that shaped the post-conviction proceedings.  The Louisiana Supreme Court, in reversing the trial court's grant of Pierre's application for post-conviction relief, described the events leading to the new evidence as follows.

> In her [trial] testimony, . . . C.C. recalled for jurors that when she was 12 years old, [Pierre] had sent her for a medical examination to determine whether she had become sexually active.  The nurse practitioner who conducted a general medical examination took C.C. at her word that she was not sexually active and did not attempt more detailed physical findings.  C.C.'s [trial] testimony prompted the prosecutor to ask whether she had in fact been "sexually active other than the things that [Pierre] had done to you," to which C.C. replied, "No."

> \*   \*   \*

> . . . .  In February 2009, C.C. reported to the police that she and a girlfriend had been riding around with a teenage boy, B.B., they had just met and that he had forced both of them to perform sexual acts.  An arrest warrant issued for B.B., but only days after she made the complaint, C.C. met with prosecutor Rhodes, who had developed a relationship with her over the course of preparing her testimony for [Pierre's] trial, and [she] admitted the report was false and that the sex with B.B. was consensual.  The warrant for B.B. was never executed.  At the end of October 2009, C.C. then revealed . . . that, in fact, Michael Percle [the husband of C.C.'s legal guardian's daughter; C.C. lived with the Percles after she was removed from her grandmother's house, including during the trial] had also been sexually abusing her during the same period of time [Pierre] was molesting her.  Detective James Daigle investigated the complaint and on November 5, 2009, C.C. was interviewed at the Terrebonne Parish Children's Advocacy Center, where she had also been interviewed after revealing [Pierre's] abuse of her.  The investigation did not result in the arrest or prosecution of Michael Percle and Detective Daigle closed his file at the end of the year.

> C.C.'s allegations against Michael Percle resurfaced, however, in Claim Three of an application for post-conviction relief filed by [Pierre] in 2011.  The application quoted directly from a letter prosecutor Rhodes had written to [Pierre's] appellate counsel on March 23, 2011.  The letter advised counsel that while C.C. had

denied at trial sexual activity with anyone other than [Pierre], she had subsequently made allegations against a third party (Percle), "stating that the two molestations . . . overlapped." The letter further advised counsel that [Rhodes] had agreed with the detective handling the case they did not have "near enough to make an arrest" because the victim "is a very troubled young girl and comes from a dysfunctional family," who had been placed in therapy "to determine whether she would recant the story about the third party molestation." Rhodes also acknowledged, however, that to date, "she had continued to state that she was molested by this third party [Percle]." The upshot of these revelations in the March 2011 letter, post-conviction counsel asserted in [Pierre's] Claim Three, was that "[t]his fact, which could not have been introduced at trial, coupled with the fact that C.C.'s father is a convicted child molester and that C.C. contends that two men very close to her, both of whom have served as father figures in her life, both molested her during the same time period, is highly probative and damaging to C.C.'s credibility and would have very likely caused the jury to render a different verdict."

At the post-conviction hearings conducted on August 8 and August 9, 2012, various witnesses testified, including C.C., Rhodes, and Detective Daigle. Rhodes and Daigle recalled . . . deciding that the detective needed something more before pursuing C.C.'s claims against Percle. Daigle testified that at the time, he "was not familiar at all with Mr. Pierre's case" because he had not been involved in [Pierre's] prosecution. The detective thus did not appreciate the implications of C.C.'s claims against Percle for [Pierre's] own case, and other than the investigation he conducted through November and December 2009, [Daigle] did nothing further in the case. . . . Rhodes, on the other hand, had prepared C.C.'s testimony for trial and he testified that at the time, she "was always pretty clear that it was a one-perpetrator situation." Although he deemed the B.B. incident "fairly insignificant," Rhodes fully understood the implications of C.C.'s allegations against Michael Percle for [Pierre's] case and thus felt duty bound to reveal them to appellate counsel "as soon as I could." C.C. testified that she did not reveal the abuse at the hands of Percle either before or during [Pierre's] trial, because she was afraid that if she did so, she would be removed from the home and deprived of her "nanny" [Percle's wife], as in fact happened after her interview at the Children's Advocacy Center. C.C. testified that she decided to come forward when her nieces, ages three and six, began visiting the Percle home and she became afraid that what had happened to her would happen to them. As for the incident involving B.B., C.C.'s girlfriend had made the first

> complaint and C.C. testified she lied to cover her friend and initially to protect
> herself.

State v. Pierre, 125 So. 3d 403, 406-07 (La. 2013); State Rec. Vol. 2 of 7 at pp. 743-56

(emphasis added).

C.C.'s testimony was the only direct evidence of criminal activity introduced

against Pierre at trial.  Her credibility at trial had been the key component of the State's

case against Pierre.  Thus, the circumstances revealed post-trial of her recanting of her

trial denial that she had been sexually active with anyone other than Pierre, coupled with

her apparently false reports to authorities of two other instances of sexual molestation,

seriously undermined her credibility.

Based on these events and after an evidentiary hearing, the state trial court made

the following findings:

> [T]he Court finds that the petitioner has made a bona fide claim of actual
> innocence which warrants the granting of his application [for a new trial].
> The evidence adduced at the hearing, including but not limited to the child
> victim's post-trial recanting of her prior denials under oath of having been
> abused by others, one of whom she now accuses of abusing her during the
> same time periods involved in this case and the other of whom she falsely
> accused, at the very least undermines the prosecution's entire case and
> deprived the defendant of being able to use the information to cross-
> examine her at the trial . . . .

St. Rec. Vol. 6 of 7, November 16, 2012 Trial Court Order on Post Conviction Relief

Application (emphasis added).

On April 5, 2013, a three-judge panel of the Louisiana First Circuit Court of Appeal denied the State's application for a writ from the trial court's order for a new trial, with two judges agreeing with the trial court and the third judge dissenting and finding that no new trial was warranted.[8]  On October 15, 2013, the Louisiana Supreme Court reversed the state trial court's grant of a new trial, reinstated Pierre's conviction and sentence, and remanded the case to the trial court for consideration of the other claim Pierre had asserted in his application for post-conviction relief.[9]  Pierre's further state court post-conviction proceedings asserting his ineffective assistance of counsel claim ended on February 6, 2016, after both the trial court and the appellate court had denied relief and when the Louisiana Supreme Court denied his writ application.  State v. Pierre, 183 So. 3d 509, 2016 WL 445371 (La. Feb. 5, 2016).

## II.    FEDERAL HABEAS PETITION

Twenty days later, on February 26, 2016, the Clerk filed Pierre's federal petition for habeas corpus relief in this court.[10]  The petition asserts two broadly phrased grounds for relief:

---

[8] State Rec. Vol. 6 of 7, Case No. 2013-KW-0150, La. App. 1st Cir. Order 4/5/13 (Crain, J., dissenting).

[9] State v. Pierre, 125 So. 3d 403 (La. 2013).

[10] Record Doc. No. 4.  Pierre signed and dated his petition February 17, 2016, id. at p. 14, and it was submitted to the court on that date in deficient form.  The deficiency was corrected and the petition was formally filed on February 26, 2016.

GROUND ONE:  Petitioner's <u>Sixth</u> and Fourteenth Amendment rights <u>to a fair trial</u> as provided by the United States Constitution was violated (a) <u>when the Louisiana Supreme [Court] reversed the trial court's grant of a new trial</u> (b) where the <u>prosecution withheld (c) Brady evidence</u> of (d) <u>actual innocence</u> based on prior inconsistent statements of the alleged victim and her (e) <u>Napue</u> allegations of sexual misconduct by other men <u>which she recanted</u> at trial.[11]

GROUND TWO:  Petitioner's trial counsels [sic] provided ineffective assistance . . . when they failed to object to the State's erroneous and misleading statements to prospective jurors during voir dire examination regarding the scope of expert testimony in cases of sexual abuse.[12]

The State filed a written response in opposition to the petition,[13] and Pierre filed a reply memorandum.[14]

III.   <u>ANALYSIS</u>

(A)   <u>THRESHOLD STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[15] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to

---

[11] <u>Id.</u> at p. 5 (emphasis added).

[12] <u>Id.</u> at p. 7.

[13] Record Doc. No. 14.

[14] Record Doc. No. 16.

[15] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

Pierre's petition which, for reasons discussed below, is deemed filed in this federal court on February 17, 2016.[16]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c).

The State concedes and I agree that Pierre's habeas petition is timely and that he has exhausted his state court remedies.[17]  Accordingly, this report and recommendation addresses the substance of Pierre's claims on the merits.

---

[16] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this court initially received and filed Pierre's deficient petition on February 17, 2016, and it was later docketed on February 26, 2016, after correction of the deficiencies.  The case ultimately was opened on March 8, 2016, when the clerk received the filing fee from Pierre.  Nevertheless, the official stamp from the prison's Legal Programs Department reflects that Pierre delivered his original petition (deemed deficient in form at the time of filing) to prison officials on February 17, 2016, the same day it was mailed to the clerk of this court for filing, Record Doc. No. 2, and the same date that Pierre dated his signature on his original deficient petition.  Record Doc. No. 1 at p. 14.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

[17] Record Doc. No. 14 at pp. 9-10.

10

(B)    MERITS REVIEW LEGAL STANDARDS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

(C)    <u>PETITIONER'S CLAIMS</u>

(1)    <u>GROUND ONE:  LOUISIANA SUPREME COURT DECISION</u>

Pierre's first claim challenges the decision of the Louisiana Supreme Court reinstating his conviction and sentence.  As a matter of constitutional analysis, Pierre's first claim, construed broadly,[18] has five possible components:  The Louisiana Supreme Court decision reversing the state trial court's grant of a new trial based in part on the victim's post-trial recanting of material trial testimony violated his Sixth and Fourteenth Amendment (1) Due Process Clause right to a fundamentally fair trial and (2) to cross-examine his accuser as provided in the Confrontation Clause.  (3) The State withheld exculpatory and/or impeachment evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  (4) He presents a claim of "actual innocence."   (5) The victim's trial testimony was false and the State suborned the victim's perjury in violation of <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), by allowing her to testify in this way.

In the order quoted above, the state trial court granted Pierre a new trial in post-conviction proceedings on its review of this claim, but upon the State's application to review that decision, the Louisiana Supreme Court vacated the new trial order and reinstated Pierre's conviction and sentence.  <u>State v. Pierre</u>, 125 So. 3d at 404.

---

[18] The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

13

(a)    <u>Actual Innocence, Napue and Brady</u>

The third, fourth and fifth components of Pierre's first argument – <u>Brady</u>, actual innocence and <u>Napue</u> – provide no cognizable legal basis for relief.

First, no free-standing claim of actual innocence providing for habeas corpus relief exists in the law. <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1931 (2013) (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 404-05 (1993)). The Supreme Court has recognized only that a credible showing of actual innocence may act as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim and allow for review of the merits. <u>Id.</u> at 1931.

To meet the actual innocence requirement, a petitioner must present "new evidence" of his innocence and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" <u>Id</u>. at 1935 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). New evidence may be in the form of any "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." <u>Schlup</u>, 513 U.S. at 324; <u>accord</u> <u>Stroman v. Thaler</u>, 405 F. App'x 933, 934-35 (5th Cir. 2010) (citing <u>House v. Bell</u>, 547 U.S. 518, 537 (2006); <u>Schlup</u>, 513 U.S. at 324). The Fifth Circuit has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." <u>Moore v. Quarterman</u>, 534 F.3d 454, 465 (5th Cir. 2008).

The <u>Schlup</u> decision, however, did <u>not</u> require that the evidence be newly discovered, only that it be reliable and not presented at trial.  <u>Gladney v. Pollard</u>, 799 F.3d 889, 898 (7th Cir. 2015) (citing <u>Schlup</u>, 513 U.S. at 324).

In this case, the State has not asserted procedural bar, procedural default or untimeliness in response to Pierre's petition.  Thus, no "actual innocence" analysis is appropriate.

Similarly, Pierre's <u>Brady</u> and <u>Napue</u> arguments, which are related and intertwined, do not support federal habeas corpus relief.  Both a <u>Napue</u> claim of use of perjured testimony and a <u>Brady</u> claim alleging prosecutorial withholding of exculpatory evidence present mixed questions of law and fact.  <u>United States v. Stanford</u>, 823 F.3d 814, 838 (5th Cir. 2016), <u>pet. for cert. filed</u>, No. 16-454 (U.S. Oct. 3, 2016) (citing <u>United States v. Wall</u>, 389 F.3d 457, 465 (5th Cir. 2004)); <u>Cobb v. Thaler</u>, 682 F.3d 364, 377 (5th Cir. 2012); <u>Brazley v. Cain</u>, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing <u>United States v. Emueqbunam</u>, 268 F.3d 377, 403-04 (6th Cir. 2001); <u>Jones v. Gibson</u>, 206 F.3d 946, 958 (10th Cir. 2000); <u>United States v. Noriega</u>, 117 F.3d 1206, 1218 (11th Cir. 1997); <u>United States v. Spillone</u>, 879 F.2d 514, 520 (9th Cir. 1989)). Thus, the question before this court as to both of these arguments is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

As to Pierre's Napue argument, a state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003) (citing Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996)).  To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Id. (citing Nobles, 127 F.3d at 415); Faulder, 81 F.3d at 519 (citing Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993)).  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  Duncan, 70 F. App'x at 744 (citing Nobles, 127 F.3d at 415).

The thrust of Pierre's arguments on this claim is that the trial testimony of the victim C.C. that she was not sexually active with any person other than Pierre at the time of the rape has subsequently been shown to be false and that the State must have known the trial testimony was false.  At trial, C.C. was questioned by the prosecutor about a visit to the doctor in September 2006 when she was 12 years old.

> Q.    Had you been sexually active other than the things that Norman [Pierre] had done to you?
> A.    No.[19]

---

[19] State Rec. Vol. 3 of 7 at p. 1532 (Trial Trans. at p. 522).

Pierre cannot establish that the State <u>knew</u> that the victim did not tell the truth at trial in this regard.  As the Louisiana Supreme Court found and as the state court record confirms, "the jury returned its verdict on June 20, 2008.  C.C.'s allegations against Michael Percle [that Percle was sexually assaulting her at the same time as Pierre] came to light at the end of October 2009, . . . well over a year after the jury returned its verdict."[20]  Because the prosecution did not know and could not have known at the time of trial that there was anything false about C.C.'s testimony that she was not sexually active with any person other than Pierre, an essential element of Pierre's <u>Napue</u> claim cannot be established.  Thus, Pierre has failed to establish that the state courts' denial of relief on this <u>Napue</u> claim was contrary to or an unreasonable application of Supreme Court precedent.  He is not entitled to relief on this claim.

Pierre's <u>Brady</u> claim appears to have two components, both related to impeachment evidence that was material to C.C.'s credibility:  (1) her recanting of her testimony that she was not sexually active other than with Pierre, and (2) in February 2009, about eight months after Pierre's guilty verdict, C.C. made a false police report that a teenage boy, B.B., had sexually assaulted C.C. and a girlfriend, a report which she recanted to the prosecution in Pierre's case within days of the police report.[21]

---

[20] <u>State v. Pierre</u>, 125 So. 3d at 411.

[21] <u>Id.</u> at 406.

In <u>Brady</u>, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976)); <u>Hall v. Thaler</u>, 504 F. App'x 269, 273 (5th Cir. 2012) (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995)). The prosecution's duty to disclose includes <u>both</u> exculpatory <u>and impeachment</u> evidence. <u>Strickler</u>, 527 U.S. at 280 (citing <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985)); <u>United States v. Valas</u>, 822 F.3d 228, 236-37 (5th Cir. 2016). <u>Brady</u> claims involve "the discovery, after trial of information <u>which had been known to the prosecution but</u> unknown to the defense." <u>Lawrence v. Lensing</u>, 42 F.3d 255, 257 (5th Cir. 1994) (quoting <u>Agurs</u>, 427 U.S. at 103) (emphasis added); <u>accord</u> <u>Reed v. Stephens</u>, 739 F.3d 753, 783 (5th Cir. 2014). To prove a <u>Brady</u> violation, a defendant must establish that the evidence is favorable to the accused as exculpatory or impeachment, <u>that the evidence was suppressed by the State</u>, and that prejudice resulted from the non-disclosure. <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004) (citing <u>Strickler</u>, 527 U.S. at 281-82); <u>Reed</u>, 739 F.3d at 782.

18

Although C.C.'s apparently false allegations of sexual abuse against both Percle and B.B. were undoubtedly material to her credibility and would have been valuable impeachment material for use by the defense at trial, both events occurred well <u>after</u> trial. Thus, the prosecution could <u>not</u> have known about this impeachment evidence at the time of trial. Because Pierre cannot show that either component of this impeachment evidence was known to the prosecution at trial, he has no cognizable <u>Brady</u> claim. The Louisiana Supreme Court's denial of relief on this claim was not contrary to or an unreasonable application of <u>Brady</u>.

    (b)    <u>Confrontation Clause</u>

Construed broadly, the second constitutional component of Pierre's first claim alleges that his Sixth Amendment right to confront his accuser was violated because the child victim testified falsely at trial, which undermined his ability to cross-examine her. Specifically, he cites the order of the state trial court in granting him a new trial, finding that C.C.'s recanting of her trial testimony "deprives the defendant of being able to use the information to cross-examine her."[22] The Louisiana Supreme Court reversed this aspect of the trial court's order, stating only: "Nor can [Pierre] possibly show . . . that

---

[22] State Rec. Vol. 6 of 7, Trial Court Order 11/16/12.

a Confrontation Clause error occurred at trial on the basis of a statement made nearly two years after the fact."[23]

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This "broad Sixth Amendment right to put on a full defense [and] . . . the Confrontation Clause right to rebut the State's evidence are clearly established through longstanding Supreme Court precedent." Kittelson v. Dretke, 426 F.3d 306, 319 (5th Cir. 2005).

> Indeed, the Supreme Court's Sixth Amendment jurisprudence leaves no question about a criminal defendant's right under the Confrontation Clause to impeach, i.e., discredit, the [state's] witness[es].  Mere physical confrontation is not constitutionally adequate, because one of the important objects of the right of confrontation [is] to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses.  As a result, constitutionally adequate confrontation must include the meaningful opportunity to challenge the state's witnesses for prototypical form[s] of bias.  Such forms include the witness's . . . prejudices, or ulterior motives from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.  A witness's own inconsistent statements are among these prototypical forms of bias because they undoubtedly provide[] valuable aid to the jury in assessing [witnesses'] credibility.

Blackston v. Rapelje, 780 F.3d 340, 348-49 (6th Cir.), cert. denied, 136 S. Ct. 388 (2015) (quotations omitted) (brackets in original) (citing Olden v. Kentucky, 488 U.S. 227, 232 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986); Davis v. Alaska, 415 U.S. 308, 316-18 (1974); Harris v. New York, 401 U.S. 222, 225 (1971); Berger v. California,

---

[23] State v. Pierre, 125 So. 3d at 411.

393 U.S. 314, 315 (1969); <u>Greene v. McElroy</u>, 360 U.S. 474, 496-97 (1959)); <u>accord</u>

<u>Kittelson</u>, 426 F.3d at 318-19 (citing <u>Davis</u>, 415 U.S. at 318; <u>Taylor v. Illinois</u>, 484 U.S.

400, 410 (1988); <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986); <u>Chambers v. Mississippi</u>,

410 U.S. 284, 295 (1973); <u>Webb v. Texas</u>, 409 U.S. 95 (1972); <u>Washington v. Texas</u>, 388

U.S. 14 (1967)).

The prosecutor at Pierre's trial asked C.C. "whether she had in fact been 'sexually

active other than the things that [defendant] had done to you,' to which C.C. replied,

'No.'" <u>State v. Pierre</u>, 125 So. 3d at 405. The alleged falsity of that statement and C.C.'s

motive for lying about it at the trial surfaced while Pierre's direct appeal of his June 2008

conviction was pending.

Because there were no eyewitnesses to or physical evidence of the sexual abuse

of C.C. for which Pierre was convicted, her credibility as the victim was necessarily a

central issue at trial. The facts of Percle's simultaneous sexual abuse of C.C. and her

motive to lie about that sexual activity, which she revealed to the prosecutor and a

detective more than a year after the trial ended, "could not have been introduced at trial,"

<u>id.</u> at 406, because those facts were unknown to the prosecutor and the defendant at that

time.

> The Confrontation Clause does not guarantee defendants cross-
> examination to whatever extent they desire. A trial judge has discretion to
> impose reasonable limits on cross-examination based on concerns about
> harassment, prejudice, confusion of the issues, the witness'[s] safety, or

> interrogation that is repetitive or only marginally relevant.  Whether the
> exclusion of evidence is of a constitutional dimension depends on the trial
> court's reason for the exclusion and the effect of the exclusion.

Kittelson, 426 F.3d at 319 (quotations omitted) (citing Davis, 415 U.S. at 315; Van

Arsdall, 475 U.S. at 679-80; Bigby v. Dretke, 402 F.3d 551, 573 (5th Cir. 2005))

(emphasis added).

The trial court did not exclude any evidence that C.C. had made inconsistent

statements about her sexual activity while Pierre was allegedly abusing her or that she

had a motive to lie about that activity, because neither party knew of or tried to introduce

such evidence.  Similarly, her admittedly false accusation of sexual abuse by B.B. did not

occur until well after the guilty verdict.  The Confrontation Clause is not implicated by

any action or inaction of the trial court with respect to evidence of which the court had

no knowledge.  See id. at 319 (citing Van Arsdall, 475 U.S. at 684; United States v.

Valenzuela-Bernal, 458 U.S. 858, 867 (1982)) (quoting United States v. Scheffer, 523

U.S. 303, 308 (1998)) ("exclusions of evidence are unconstitutional if they 'significantly

undermine fundamental elements of the accused's defense") (emphasis added); see also

Blackston, 780 F.3d at 344, 353-54 (Petitioner was convicted at a second trial in state

court.  Before the second trial began, two of the state's key witnesses recanted their

inculpatory testimony from the first trial.  When the witnesses were determined to be

unavailable at the new trial, the court ordered their earlier testimony read to the jury, but

denied defendant the right to impeach that testimony with evidence of the witnesses' subsequent recantations, which were inconsistent with their prior testimony and explained their motives for having testified falsely at the first trial. The appeals court held that exclusion of the recantations violated petitioner's rights under the Confrontation Clause.).

Accordingly, Pierre's claim under the Confrontation Clause provides no basis for relief.

### (c)    Newly Discovered Evidence:  Due Process Fundamentally Fair Trial

The most difficult constitutional component of Pierre's first claim is his due process claim that the Louisiana Supreme Court's reversal of the state trial court's order granting him a new trial denied him a fundamentally fair trial. The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact. Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); see also Brazley, 2002 WL 760471, at *4 n.4 (prosecutorial misconduct resulting in denial of fundamental fairness is a mixed question of law and fact); Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (admission or exclusion of evidence under the Due Process Clause is a mixed question of law and fact). Thus, this court must determine whether the denial of relief by the Louisiana Supreme Court was contrary to or an unreasonable application of federal constitutional law, particularly "clearly established" Supreme Court precedent.

New evidence discovered after trial is not alone a basis for federal habeas corpus relief.  The newly discovered evidence must be material to some underlying constitutional violation to warrant habeas relief.  Construed broadly, Pierre's petition argues that the evidence discovered post-trial demonstrates C.C.'s propensity to make false allegations of sexual abuse.  Petitioner contends that the victim's false trial testimony concerning her other sexual activity at the time of his alleged abuse, coupled with her post-trial false allegations against others of sexual abuse, rendered his trial fundamentally unfair in violation of his due process rights under the Fifth and Fourteenth Amendments.  Significantly, however, none of these circumstances was known, either by the prosecution or by Pierre, at the time of trial, and the state trial court had no role in their exclusion from evidence.

In a number of claim contexts, courts have found that the due process right to a fundamentally fair trial is violated only when substantial error that probably affected the verdict has occurred.  For example, when a habeas petitioner challenges a state court's denial of a motion for a mistrial, federal habeas corpus relief is warranted only if the denial was an "'error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'"  Hernandez v. Dretke, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988)) (ellipsis in original).  To obtain relief on such a claim, a petitioner

24

must show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." [The petitioner] must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. [The error] must have had a substantial effect or influence in determining the verdict." In determining harm, this court should consider (1) the importance of the witness's testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case.

Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996)) (citing Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir. 1995)).

Similarly, when the exclusion of evidence at trial is alleged to deny "a fundamentally fair trial, the evidence must be 'material,' in the constitutional sense that it 'creates a reasonable doubt that did not otherwise exist' as evaluated 'in the context of the entire record.'" Jimenez v. Walker, 458 F.3d 130, 146 (2nd Cir. 2006) (quoting Agurs, 427 U.S. at 112-13). "'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.' But 'if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.'" Id. at 146-47 (quoting Agurs, 427 U.S. at 112-13). When prosecutorial misconduct is the alleged basis of the due process violation, a habeas petitioner must demonstrate that the misconduct rendered his trial fundamentally unfair by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers v. Lynaugh, 848 F.2d

606, 609 (5th Cir. 1988) (footnote and citations omitted); accord United States v.

Sanchez, 432 F. App'x 371, 374 (5th Cir. 2011); Brown v. Dretke, 419 F.3d 365, 377

(5th Cir. 2005).

Thus, Pierre's fundamental fairness claim for habeas corpus relief is that he is

entitled to a new trial based on this newly discovered evidence that – although unknown

at the time of trial – was material to the case against him, which was based substantially

on the victim's testimony and her credibility.  His argument appears to be that post-trial

events have demonstrated C.C.'s propensity for lying about sexual abuse and her

concomitant lack of veracity in making allegations of sexual abuse against him.

In evaluating the significance of newly discovered evidence,

> [t]he clearly established federal law standard in [the Fifth] Circuit relative
> to the issue of whether a motion for new trial should be granted based upon
> newly discovered evidence is set forth in Berry v. State, 10 Ga. 511, 1851
> WL 1405 (1851).  Such standard is known as the Berry rule and has been
> recognized by the U.S. Fifth Circuit Court of Appeals as the applicable
> standard under the circumstances as recently as last year.  See, U.S. v.
> Piazza, 647 F.3d 559 (5th Cir. 2011).  Under the Berry rule, the four (4)
> elements that a defendant must show to obtain a new trial based upon
> newly discovered evidence are: ["](1) that the evidence is newly discovered
> and was unknown to him at the time of trial; (2) that the failure to discover
> the evidence was not due to his lack of diligence; (3) that the evidence is
> not merely cumulative, but is material; and (4) that the evidence would
> probably produce an acquittal."  U.S. v. Gutierrez, [No. SA-05-CR-639-
> XR,] 2007 WL 3026609[, at *9] (W.D. Tex. [Oct. 16,] 2007), quoting U.S.
> v. Blackthorne, 378 F.3d 449, 452 (5th Cir. 2004).

Spring v. Sec'y, La. Dep't of Corr., No. 11-308-BAJ-CN, 2012 WL 1065530, at *6

(M.D. La. Mar. 8, 2012), report & recommendation adopted, 2012 WL 1065498 (M.D.

La. Mar. 28, 2012);[24] accord Holton v. Cain, No. 3:11-CV-00749-BAJ-RL, 2014 WL

3189737, at *8 (M.D. La. July 8, 2014) (citing Piazza, 647 F.3d at 565); Kuenzel v.

Allen, 880 F. Supp. 2d 1162, 1177 (N.D. Ala. 2009), aff'd sub nom. Kuenzel v. Comm'r,

Ala. Dep't of Corr., 690 F.3d 1311 (11th Cir. 2012) (citing Lucas v. Johnson, 132 F.3d

1069, 1074, 1075 n.3 (5th Cir. 1998)); Smith v. Quarterman, No. SA-07-CA-399-XR,

2008 WL 2465400, at *6 (W.D. Tex. June 17, 2008) (citing Blackthorne, 378 F.3d

at 452); Jacobs v. Waller, No. 1:05CV130-LG-RHW, 2008 WL 681034, at *8 (S.D.

Miss. Feb. 6, 2008) (citing Lucas, 132 F.3d at 1076); Baker v. Cain, No. 05-3772, 2007

WL 1240203, at *6 (E.D. La. Apr. 26, 2007) (citing Lucas, 132 F.3d at 1076).

Although the Fifth Circuit's decisions in Piazza and Blackthorne (which are cited

in some of the district court habeas corpus cases listed above) involved motions for a new

trial pursuant to Federal Rule of Criminal Procedure 33 by defendants who had been

convicted in federal court, the Fifth Circuit has also applied the Berry rule in cases

alleging that newly discovered evidence justified habeas corpus relief, such as Bell v.

Cockrell, 31 F. App'x 156, 2001 WL 1748398, at *2 (5th Cir. 2001), cert. granted &

---

[24] The Fifth Circuit sometimes describes the Berry rule as having five, rather than four, factors. Cases using the five-part test typically separate the element of materiality from whether the evidence is merely impeaching or cumulative. Piazza, 647 F.3d at 565 n.4.

judgment vacated on other grounds, 536 U.S. 954 (2002), and Lucas, 132 F.3d at 1074, 1075 n.3 (citing United States v. Freeman, 77 F.3d 812, 816-17 (5th Cir. 1996); Berry, 10 Ga. at 511). In these cases, the Fifth Circuit applied the Berry factors as a threshold step in evaluating whether the petitioner had presented enough newly discovered evidence to assert an underlying constitutional claim, such as a claim of actual innocence (Lucas) or ineffective assistance of counsel (Bell). See Kuenzel, 880 F. Supp. 2d at 1177 (A threshold question is whether "evidence proffered in support of an innocence claim is new. 'New evidence' has not been defined by the Supreme Court or the Eleventh Circuit Court of Appeals in the context of the actual innocence gateway, but the Fifth Circuit Court of Appeals, evaluating both a free-standing actual innocence claim and a 'gateway' claim in Lucas . . . , set the same evidentiary standard for both.")

Applying the foregoing standards in the instant case would support Pierre's argument. The evidence that C.C. lied about the extent of her sexual activity at the time of Pierre's alleged abuse and had a motive to lie about it before and during Pierre's trial is newly discovered and was unknown to petitioner at that time. There is no indication that the failure to discover the evidence was due to Pierre's lack of diligence. The prosecutor discovered the new evidence in late October or November 2009, at least 16 months after the verdict, when the prosecutor investigated C.C.'s complaint of sexual abuse by Percle. The new facts were not revealed to Pierre's counsel until March 2011.

The evidence is not merely cumulative.  It is material to C.C.'s credibility, which was essential to the case against Pierre.  No specific evidence was presented at trial to attack her credibility, other than Pierre's denial in his own testimony that he had abused C.C.  No physical evidence of rape or other corroborating evidence of the most crucial aspects of C.C.'s testimony was presented at trial.  The new evidence that she lied at trial, had a motive for lying at trial and has a propensity to make false allegations of sexual abuse against others is significant and was not previously considered by the jury.

Although the last <u>Berry</u> factor is a close one, I find that the new evidence in this case would probably produce an acquittal.  In <u>Piazza</u>, defendant was one of several adult brothers whom the buyer of illegal guns had known but not seen since their childhood.  The newly discovered evidence in that case did not directly controvert the buyer's testimony that the defendant had sold the guns to him, but the new evidence did "greatly strengthen the defendant's argument that Jed [another brother], and not [defendant], was the one who sold the guns to [the buyer]–an argument that the jury heard below and that a jury could properly consider in determining guilt or innocence in a new trial." <u>Piazza</u>, 647 F.3d at 569.  The Fifth Circuit affirmed the trial court's finding that the "proposed testimony would probably produce an acquittal for [defendant] because it connects [his brother Jed] to the guns and to the phone call placed to [the buyer].  The district court determined that it was <u>more likely than not</u> that the Piazza brother who sold the guns to

[the buyer] was [Jed] rather than [the defendant]." <u>Id.</u> at 569 (emphasis added). "The <u>totality of the new evidence could rise to the level of creating a reasonable doubt</u>" that the defendant had committed the crime. <u>Id.</u> at 570 (emphasis added).

In Pierre's case, the totality of the new evidence makes it more likely than not that a reasonable doubt about his guilt would be created in the minds of the jury members because the evidence severely undermines C.C.'s credibility when she testified about Pierre's sexual abuse. The totality of that evidence could very well rise to the level of creating a reasonable doubt about whether Pierre sexually abused C.C. that would probably produce an acquittal.

Despite my foregoing findings, however, the case law that provides the most closely analogous analysis to Pierre's claim creates a substantial barrier to granting relief in this case, because there is <u>no</u> indication that <u>the State</u>, either through prosecutorial conduct or omission or through the court's exclusion of evidence, was involved in the alleged due process violation in any way.

In Pierre's favor, the United States Courts of Appeals for the Second and Ninth Circuits have both held that a federal constitutional due process violation can result from false testimony at trial, even when there is <u>no</u> knowledge or misconduct by the prosecutor. As explained by a district court in the Second Circuit,

> [a] petitioner's claim that his or her conviction was based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth

Amendment.  The threshold question is whether the witness in fact committed perjury.  "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory."

Once that threshold determination has been met, "[w]hether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict <u>and the extent to which the prosecution was aware of the perjury</u>."  "Where the prosecution knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that false testimony could have affected the judgment of the jury."  <u>When there is no indication the government knew that the testimony may have been perjured</u>, "a new trial is warranted only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted."

<u>Thornton v. Smith</u>, No. 14-CV-3787, 2015 WL 9581820, at *11 (E.D.N.Y. Dec. 30, 2015) (citing <u>Napue</u>, 360 U.S. at 269) (quoting <u>United States v. Monteleone</u>, 257 F.3d 210, 219 (2d Cir. 2001); <u>United States v. Wallach</u>, 935 F.2d 445, 456 (2d Cir. 1991)) (internal citations and quotations omitted) (emphasis added); <u>see also</u> <u>Maxwell v. Roe</u>, 628 F.3d 486, 506 (9th Cir. 2010) (quotation and citations omitted) (Petitioner's due process rights were violated when perjured testimony by the prosecution's main witness undermined confidence in the verdict, even if the prosecutor did not know of the perjury. "A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness.").

In contrast, however, the majority of federal circuit courts, <u>including significantly the Fifth Circuit</u>, decline to follow the Second and Ninth Circuits and instead require a

petitioner to prove governmental knowledge of the false testimony as a prerequisite to a new trial or habeas relief. "'The Fifth Circuit has long abided by the standard requiring that for use of perjured testimony to constitute constitutional error, the <u>prosecution must have knowingly used the testimony</u> to obtain a conviction.'" <u>United States v. Lawrence</u>, No. 4:03-0436-1, 2014 WL 7151362, at *3 (S.D. Tex. Dec. 12, 2014) (quoting <u>Black v. Collins</u>, 962 F.2d 394, 407 (5th Cir. 1992)) (emphasis added); <u>see also</u> <u>United States v. Puma</u>, 210 F.3d 368, 2000 WL 293955, at *1 (5th Cir. Feb. 17, 2000) (In a 28 U.S.C. § 2255 case, resolving petitioner's "allegation of a due process violation based on a coconspirators's [sic] perjured testimony is unnecessary because even if he could establish that the testimony was perjurious, he failed to make any showing that the Government knew that the testimony was untrue."); <u>May v. Collins</u>, 955 F.2d 299, 315 (5th Cir. 1992), <u>superseded by statute on other grounds as stated in</u> <u>Duncan</u>, 70 F. App'x at 746 (citations omitted) (To succeed on a due process claim based on the use of perjured testimony, petitioner must show that (1) a witness "gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false.").

The United States Supreme Court has not resolved this split among the circuit courts, leaving no "clearly established Federal law, as determined by the Supreme Court" to guide the lower courts in applying the Section 2254(d)(1) standard of review. The law

is clear, however, that when there is no Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, and no federal habeas relief is warranted.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation omitted) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."); Gomez v. Thaler, 526 F. App'x 355, 359-60 (5th Cir. 2013) (citing Van Patten, 552 U.S. at 126) (When no Supreme Court precedent directly addressed the presented issue, it could not be said that the state court unreasonably applied clearly established federal law.).

Instead, the Supreme Court has revealed a dramatic split of opinion on this issue in a series of denials of petitions for writs of certiorari, which of course do not result in clearly established Supreme Court precedent.  "'[T]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial.'"  Lotter v. Houston, 771 F. Supp. 2d 1074, 1101-02 (D. Neb. 2011) (quoting LaMothe v. Cademartori, No. 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005), aff'd, 235 F. App'x 411 (9th Cir. 2007) (citing Jacobs v. Scott, 513 U.S. 1067, 1067 (1995) (Stevens, J., dissenting from denial of certiorari))); see also Cash v. Maxwell, 132 S. Ct. 611, 615 (2012) (Scalia, J.,

dissenting from denial of certiorari) (The Ninth Circuit "stretched the Constitution, holding that the use of false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. We have never held that, and are unlikely ever to do so. All we have held is that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."); Kinsel v. Cain, 647 F.3d 265, 271 (5th Cir. 2011) (The Supreme Court has never clearly established whether a due process violation occurs "when perjured testimony is provided by a government witness even without the government's knowledge."); but see Jacobs, 513 U.S. at 1067 (Stevens, J., dissenting from denial of certiorari) (urging that the Supreme Court had not, but should, consider whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge).

In Cash v. Maxwell, cited above, the Supreme Court denied the State of California's petition for a writ of certiorari from the Ninth Circuit's grant of habeas corpus relief based on a due process violation arising from perjured trial testimony by a jailhouse informant. In the underlying case, Maxwell v. Roe, 628 F.3d at 486, Maxwell had been arrested and charged with murdering ten men in downtown Los Angeles, a series of murders dubbed the "Skid Row Stabber" killings. The prosecution's only physical evidence was Maxwell's palm print from a bench in an area frequented by

Maxwell near the murders.  The prosecution also relied on the testimony of a known jailhouse informant, Sidney Storch, who claimed that Maxwell had confessed to him when they shared a cell.  Although Maxwell maintained his innocence and said that Storch was lying, Maxwell was convicted after nine months of trial.

Years later, after equitably tolling an otherwise untimely request for post-conviction relief, the California state courts denied Maxwell relief on his claim that Storch had given perjured testimony at Maxwell's trial.  Maxwell's argument was based on substantial evidence that, after his trial, Storch was found to have provided false and misleading information to state prosecutors over the years in an effort to manipulate the system and obtain benefits as a jailhouse informant.  The state courts nonetheless held that Storch had not lied at Maxwell's trial.

The federal district court in California denied Maxwell's related habeas petition, finding that Maxwell had failed to establish a due process violation resulting from the prosecutor's knowing use of perjured testimony by Storch and other jailhouse informants.  This decision was based on the district court's findings that the state court's factual conclusions were not objectively unreasonable and that Storch's false testimony did not prejudice Maxwell.

On appeal, the Ninth Circuit detailed the series of misinformation that Storch had provided to the State over many years, which tended to establish that he was a perpetual

liar.  Id. at 500-03, 504-05.  The Ninth Circuit cited the factors outlined in Napue, 360 U.S. at 269, focusing on the fact that the verdict resulted from false information which the State had not corrected.  Id. at 499-500.  The appeals court held that the state court's conclusion that Storch had testified truthfully at trial was an unreasonable determination of the facts and that Storch's testimony was material to the verdict.  Id. at 500-01, 507-08.  The Ninth Circuit found that Storch's many non-material lies at Maxwell's trial "indicate[] a willingness to lie under oath and lend[] credence to Maxwell's arguments that Storch lied when he testified about the alleged confession and that the prosecution knew or should have known that Storch gave false testimony."  Id. at 501.

After finding the state courts' factual conclusion unreasonable, the Ninth Circuit made no finding whether the prosecution knew or should have known about Storch's lies.  Instead, the court relied on its prior case law, holding "that irrespective of whether the prosecutor knew that the informant had given false testimony, 'one [could not] reasonably deny that [the jailhouse informant] gave perjured testimony at [petitioner's] trial.'"  Id. at 506 (quoting Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002)).  The appeals court further recognized that "a government's assurances that false evidence was presented in good faith are little comfort to a criminal defendant wrongly convicted on the basis of such evidence.  A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness."  Id.

(quotation omitted).  The Ninth Circuit ultimately decided that Maxwell was entitled to federal habeas relief and reversed the federal district court's denial of relief on the due process issue.

When the Supreme Court denied the State's petition for a writ of certiorari, Justice Sotomayor wrote in support of the denial that "powerful evidence supported Maxwell's claim that Storch falsely testified" and that the false testimony was made in an attempt "to manipulate the integrity of the judicial system as he did in numerous other cases." Cash v. Maxwell, 132 S. Ct. at 612.  Justice Sotomayor stated that "the Ninth Circuit conducted precisely the inquiry required by § 2254(d)(2) and our precedents."  Id.

In dissenting from the denial of certiorari, Justice Scalia, joined by Justice Alito, disagreed that Maxwell had established an unreasonable determination of the facts by the state courts.  He wrote:

> To make matters worse, having stretched the facts, the Ninth Circuit also stretched the Constitution, holding that the use of Storch's false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. . . .  We have never held that, **and are unlikely ever to do so**.  All we have held is that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  This extension of due process by the Ninth Circuit should not be left standing.

Id. at 615 (quoting Napue, 360 U.S. at 269) (bold emphasis added).

Although not specifically addressed in Maxwell, the denial of certiorari at least tacitly allowed to go unquestioned the Ninth Circuit's determination that due process can

be violated by false testimony at trial even without a finding that the prosecution knew of the perjury.  With Justice Scalia's death, the Supreme Court may now be evenly divided on the crucial question of whether State knowledge, action or omission is a prerequisite for a due process violation when a key witness's testimony is subsequently revealed to have been perjured or substantially and materially untrustworthy.

Applying the foregoing disparate standards to the amorphous, highly subjective constitutional concept of substantive due process leads me to the definite impression that C.C.'s demonstrated peregrinations around the truth concerning sexual abuse deprived Pierre of a fundamentally fair trial.  Judge Bethancourt of the state trial court in Houma, Louisiana, was the only judge of the dozen or so who have reviewed this matter who actually observed firsthand the bearing and demeanor of all witnesses, both at trial and at the post-trial evidentiary hearing.  He concluded that a new trial is warranted.  Two judges of the three-judge court of appeal panel reviewing the trial court's order agreed. Some deference should be accorded to this view in this mixed question of law and fact.

On the other hand, as Judge Crain of the Louisiana First Circuit wrote in his dissent from that court's order upholding Judge Bethancourt's grant of a new trial:

> The victim's false statement that she was abused by no one else does not require a conclusion that the defendant did not rape her.  The victim never recanted her testimony regarding the defendant raping her.  The new evidence does not establish the defendant's actual innocence.  Further, the post-trial false accusation did not exist at the time of the defendant's trial. It cannot now be used to measure either the victim's credibility at that trial

or the defendant's innocence.  It cannot be said that it is more likely than not that no reasonable juror could have convicted the defendant in light of all of the evidence.[25]

The Louisiana Supreme Court thoroughly reviewed the case and overturned the new trial order in a thoughtful and well-reasoned opinion.  Congress has expressed its will in AEDPA and has clearly prohibited federal courts from granting habeas relief in these circumstances, unless the state courts' decision was contrary to or an unreasonable application of clearly established Supreme Court precedent.  There is no clearly established Supreme Court precedent applicable to these circumstances.  Instead, there is only the split of opinion expressed by Justices Sotomayor and Scalia/Alito in a Court that now awaits the uncertain appointment of a new justice whose views may break the tie.  It would be pure speculation to conclude that the tie will be broken in a manner that favors the granting of relief to Pierre.  Stacked against such speculation is the clear precedent of the United States Court of Appeals for the Fifth Circuit that, even when perjury at trial is clearly established, which has <u>not</u> been done in Pierre's case, no relief can be granted unless the State has been complicit in the presentation of false testimony.  No such finding can be made in this case.

My own conclusion is that Pierre should receive a new trial because the newly discovered evidence of C.C.'s untrustworthiness establishes that he did not receive a

---

[25] State Rec. Vol. 6 of 7, Case No. 2013-KW-0150, La. App. 1st Cir. Order 4/5/13 (Crain, J., dissenting).

fundamentally fair trial. I agree with Judge Bethancourt's decision – although not his reasoning – granting a new trial. However, it is my unalterable view that a judge must find the law and apply it. In AEDPA, Congress has made the law clear: Federal habeas relief is not available unless the Louisiana Supreme Court's decision was contrary to or an unreasonable application of <u>clearly</u> established Supreme Court precedent. I must apply that law. The Fifth Circuit precedent cited above is binding on me. Under these circumstances, I regretfully recommend that Pierre's request for federal habeas relief on the first claim asserted in his petition should be denied.

(2)    <u>GROUND TWO:  INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Pierre argues that his trial counsel was ineffective because his attorney failed to object to the prosecutor's allegedly erroneous statements during voir dire about the scope of expert testimony in sexual abuse cases. Pierre quotes[26] the following statements by the prosecutor as to which he contends that his counsel should have objected:

> You would normally expect then that expert to be able to give an opinion, right? So if I'm on a jury and this person interviews this child, who works with this child and sees this child, I'm on a jury, I'm waiting for the million dollar question, which is what? You believe the child? Do you think that the child's symptoms are related to some sort of trauma? Yes. And do you think that trauma could be child sexual abuse? Yes. I mean these are questions that an average juror would expect me to ask, right? I mean, let's face it, why else would she be here as an expert if she wasn't going to give an opinion?
>
> <u>Under Louisiana law</u>, whether you agree with this or not is irrelevant, <u>we</u> [can't] talk about it.  The Louisiana Supreme Court has said the State, nor the

---

[26] Record Doc. No. 4 (Petition at pp. 8-9).

Defense, is allowed to ask those questions.  I cannot, I am prohibited, you are prohibited, the Court is prohibited from asking those three questions – Do you believe the child?  Do you believe that the child's symptoms are consistent with child sexual abuse?  Do you believe that the child's behavior is indicative of child sexual abuse?  Yes, yes, yes, which translates into [sic] my opinion is [sic] that the child was sexually abused[d], right?  The Supreme Court has said that cuts too close to the issue of ultimate guilt, and that's the function of the jury.  Okay.

Now, that is the role of the jury in a child sexual abuse case, okay.  You will not be allowed, nor will I be allowed, nor will Mr. Stewart be allowed, nor will the Court be allowed to ask those magic questions.  The therapist can talk about the treatment, and you know, this, that, and the other, very general, very broad brush type of things.  Okay.  [See Vol. I, Pgs. 62-63 (Voir Dire Transcript Pgs. 101-102)].

                    *    *    *

[T]he Louisiana Supreme Court has ruled that they are not allowed to give an opinion as to whether or not they believe the child, as to whether or not the child's symptoms and acting out is consistent with a child who's been sexually abused, whether or not the child suffers from a post-traumatic stress disorder that they believe has as its origin sexual abuse.

The therapist can no longer give an opinion.  The Louisiana Supreme Court has said, and even though this doesn't help me as a prosecutor, I agree with it, the Louisiana Supreme Court says those types of opinions cut too close to the bone of guilt or innocence.  Because in a case like this, where a child is saying yes, and there's no physical evidence, and it's a he said/she said, right, because child sexual abuse cases often have no physical evidence.  Tears in the rectum could be anything from a hard stool to a bicycle seat, heals like that.  Vaginal tears heal.  I mean there's often no physical evidence.  I'm going to talk about that in a minute.  A lot of times these cases revolve around the testimony of the child, and the denial.

The Louisiana Supreme Court said we don't want jurors sitting back going hmm, bring me a tiebreaker, bring me the therapist, and if the therapist says she believes them, or he believes them, or the therapist says I think this child is exhibiting behavior that's consistent with a child that's been abused, hallelujah, I can find the guy guilty because I'm scared to death to put him out on the street

in case he did it.  Right?  [See Vol. I, Pgs. 64-65 (Voir Dire Transcript Pgs. 229-230)].[27]

Expressly applying <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the state trial court rejected this claim during post-conviction proceedings, based on the record and the testimony of defense counsel during a post-trial evidentiary hearing.  As part of a seven-page opinion denying relief, the state trial court concluded:

> The record shows that approximately one week before trial, the prosecutor filed a motion for a special jury instruction regarding expert testimony in a child sexual abuse case. . . . [and] announced his intention to raise this issue in voir dire . . . .  Defense counsel challenged the requested instruction in writing and orally to the court.  The motion was argued outside of the presence of the jury and granted in part <u>over defense objections</u>. . . .
>     . . . .  At the evidentiary hearing, both [defense counsel] testified that they forcefully objected to the prosecutor's proposed voir dire, intended questioning . . . and proposed jury instruction.  The trial record supports their testimony.  Although neither lawyer recalled the precise reason they did not make contemporaneous objections at trial, both testified that, rather than potentially angering a judge or alienating a jury, they instead generally urge objections before and after voir dire, and typically do so at a bench conference.  They did this and more at Mr. Pierre's trial.  Their argument[s] were urged or reurged, and rejected, on at least five (5) separate occasions:  at the pre-trial hearing, at the outset of voir dire, at the close of voir dire (Panel #2), before the jury was sworn, and again before cross-examination of the state's witnesses.  They also requested that their objections be deemed continuing.[28]

On April 7, 2015, the Louisiana First Circuit Court of Appeal denied Pierre's writ application concerning this claim without stated reasons,[29] and the Louisiana Supreme

---

[27] State Rec. Vol. 3 of 7 at pp. 1111-12, 116-17 (Trial Trans. at pp. 101-02; 106-07) (emphasis added).

[28] State Rec. Vol. 2 of 7, State trial court "Reasons for Judgment" denying post-conviction relief, p. 5 of 7 (772) (6/30/14).

[29] State Rec. Vol. 2 of 7 at p. 820 (La. App. 1st Cir. Order 4/7/15).

Court did the same on February 5, 2016.[30]  Thus, the decision of the state trial court was the last reasoned state court opinion on this issue, and it is presumed that the appellate courts relied upon the same grounds in their subsequent related writ denials.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

As the state trial court noted, the standard for judging performance of counsel was established in Strickland, in which the United States Supreme Court enunciated a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; accord Gates v. Davis, No. 15-70024, 2016 WL 4473230, at *1 (5th Cir. Aug. 24, 2016) (citing Harrington v. Richter, 562 U.S. 86, 112 (2011); Strickland, 466 U.S. at 687); United States v. Scribner, 832 F.3d 252, 258 (5th Cir. 2016); United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim

---

[30] State Rec. Vol. 2 of 7 at p. 824 (La. S. Ct. Order 2/5/16).

based solely on a petitioner's failure to meet either prong of the test.  <u>Bass v. Morgan</u>, No. 14-30843, 2016 WL 3455948, at *1 (5th Cir. June 23, 2016) (citing <u>Richter</u>, 562 U.S. at 112; <u>Strickland</u>, 466 U.S. at 694); <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . .  But it is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>see also</u> <u>Richter</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On habeas review, the Supreme Court has clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  <u>Id.</u> at 105.  The <u>Richter</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.

<u>Id.</u> at 105.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 697 (2002) (citing Strickland, 466 U.S. at 689). A "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)); see also Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) (quoting Jones, 287 F.3d at 331) ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'"). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689, 693; Thomas v. Thaler, 520 F. App'x 276, 281 (5th Cir. 2013) (citing Strickland, 466 U.S. at 689; Virgil v. Dretke, 446 F.3d 598, 608 (5th Cir. 2006); Titsworth v. Dretke, 401 F.3d 301, 310 (5th Cir. 2005); United States v. Harris, 408 F.3d 186, 189 (5th Cir. 2005)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).

As to the deficient performance component of the <u>Strickland</u> standard, the state court record establishes, as the state trial court found, that defense counsel in fact made vigorous – though unsuccessful – objections to the prosecutor's statements, which were intertwined with the prosecution's pretrial request for a special jury instruction concerning the scope of expert testimony.  In an extensive discussion <u>before</u> voir dire commenced, the prosecutor revealed his plans and asked the judge to decide whether he could address the issue with potential jurors during voir dire.[31] He concluded his argument as follows:

> Prosecutor [Rhodes]:  So all we're asking for is that the jury be allowed to know that the state of the law for child sexual abuse cases and vis-a-vis experts is different.
> The Court:  During voir dire?
> Prosecutor [Rhodes]:  <u>And</u> in the charge.
> The Court: In the charge.
> Prosecutor [Rhodes]:  Right.  So that <u>I can tell them in voir dire</u>, look, you're going to hear a charge about experts.  And traditionally, you would be able to evaluate their expert opinion.  You don't have to take it, but you can – I can ask an expert.  In this case I can't.  Is that going to bother you because here it is, you know, he said/she said, and you're looking for something to tip the scales to help you.[32]

---

[31] State Rec. Vol. 3 of 7 at pp. 1028-31, Trial Trans. at pp. 19-21.

[32] State Rec. Vol. 3 of 7 at pp. 1031-32, Trial Trans. at pp. 21-22 (emphasis added).

Defense counsel objected.[33]  Before voir dire commenced, the state trial judge overruled

defense counsel's objections to the prosecution's plan to address the limits of Louisiana

law on the scope of expert testimony, stating:

> And at least the State has put ya'll on notice that that is what's planning on being done, so now ya'll both – both sides have the opportunity to voir dire and select jurors accordingly.  Okay, I'm going to allow it.[34]

Immediately after the voir dire examination concluded, defense counsel reiterated

their objection to the prosecutor's statements.

> Defense Counsel (Stewart):  [W]ith regard to the voir dire regarding the – the voir dire regarding the expert, I think Damon filed a motion objecting to the reference to the expert.  I think the Court ruled on it.  However, we'd just like to make the same objection to the references of the expert witnesses in the voir dire process of the record, Judge.
> The Court:  Okay. I think it's already done, yes.[35]

As defense counsel testified at the post-conviction evidentiary hearing, they did

not interrupt the prosecutor during voir dire or witness testimony for strategic and tactical

reasons; specifically, to avoid angering the trial judge who had already overruled their

objections or irritating the jury with what the jurors might view as delay and technical

obstructions.[36]

---

[33] State Rec. Vol. 3 of 7 at pp. 1032-38, Trial Trans. at pp. 22-28.

[34] State Rec. Vol. 3 of 7 at p. 1038, Trial Trans. at p. 28.

[35] State Rec. Vol. 3 of 7 at p. 1378, Trial Trans. at p. 368.

[36] State Rec. Vol. 2 of 7 at pp. 873-75, 878-79; 891-92 (8/8/12 Evid. Hrg. Trans. at pp. 31-33, 36-37; 49-50).

Counsel was not obliged as a matter of constitutional effectiveness to enter another objection during voir dire when the state trial court's prior ruling had already overruled that objection. See Clark v. Thaler, 673 F.3d 410, 429 (5th Cir. 2012) (quoting Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)) ("'failure to assert a meritless objection cannot be grounds for a finding of deficient performance'"); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)) (Failure "'to raise meritless objections is not ineffective lawyering; it is the very opposite.'"); Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

The lack of success of defense counsel's strategy concerning the timing of assertion of objections, i.e. that their objections were overruled and that Pierre was subsequently convicted despite their strategic attempt to avoid aggravating the jury, does not mean that counsel's actions were deficient. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

"[F]ailure to object to leading questions and the like is generally a matter of trial strategy as to which we will not second guess counsel." Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993). Counsel's failure to object during voir dire "does not violate the first prong of Strickland because it was perfectly reasonable not to object when the prosecution's evident purpose was to inquire into a valid area of voir dire examination" or when counsel had already objected once to a prosecutor's allegedly improper explanation during voir dire and been overruled by the district court. Green, 160 F.3d at 1037, 1038. If defense counsel had reiterated their objection during voir dire in Pierre's case, the trial judge simply would have overruled it again, as he did in other instances, all at the risk of trying the patience of both judge and jurors. Such a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Johnson, 394 F.3d at 337 (quotation omitted); see Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

Counsel's decision not to repeat previously overruled objections during voir dire in the presence of prospective jurors was a strategic one. This decision was a reasonable

strategy under the circumstances.  Nothing in the record, and no argument by Pierre, establishes that this strategy was constitutionally deficient performance.

As to the prejudice component of the Strickland standard, Pierre "'must show that there is at least a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Henderson v. Cockrell, 333 F.3d 592, 599 (5th Cir. 2003) (quoting Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (additional quotation omitted).  As discussed above, Pierre argues that his counsel's error was in failing to prevent the prosecutor's discussion in voir dire concerning expert testimony.  However, a prosecutor's allegedly improper comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S.

756, 765-66 (1987) (citing <u>Darden</u>, 477 U.S. at 179); <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272, 281 (5th Cir. 1985).

Fifth Circuit precedent requires a two-step analysis when reviewing claims of improper prosecutorial statements.  <u>United States v. Wise</u>, 221 F.3d 140, 152 (5th Cir. 2000); <u>United States v. Lankford</u>, 196 F.3d 563, 574 (5th Cir. 1999).  First, the court must determine whether the prosecutor made an improper remark.  <u>Wise</u>, 221 F.3d at 152.  "If an improper remark was made, the second step is to evaluate whether the remarks affected the substantial rights of the defendant," <u>id.</u>, in that they rendered the trial "fundamentally unfair" and "the verdict might have been different had the trial been properly conducted."  <u>Rogers</u>, 848 F.2d at 609 (footnote and citations omitted).

In Pierre's case, as the Louisiana state courts ruled, the prosecutor's remarks during voir dire were not improper.  The state courts found nothing in the jury instruction requested by the prosecutor and about which he commented during voir dire erroneous as a matter of law.  The Louisiana First Circuit Court of Appeal addressed this issue in detail, evaluating both the jury instruction and the prosecutor's comments.  The appellate court flatly disagreed with Pierre's argument that any misstatement of law had occurred.  "[I]t is apparent that the jury instruction at issue explained why the expert witness could not provide an opinion that would substantively prove C.C. had been sexually abused.

This instruction was an accurate statement of the applicable law. Accordingly, this assignment of error is without merit."[37]

Pierre has provided no basis to undermine the deference due his counsel's trial and objection decisions, tactics and strategy. As determined by the state courts, defendant's trial counsel relied upon their experience with judges and juries and employed the strategy that asserting objections in front of prospective jurors during voir dire would not be beneficial to the defense. Both counsel and the state courts are entitled to great deference on this point. Pierre has not established that the state courts' denial of relief was contrary to, or an unreasonable application of, <u>Strickland</u>. He is not entitled to relief on this claim.

## **RECOMMENDATION**

I agree completely with the result – though perhaps not the "actual innocence" component reasoning – of the Terrebonne Parish state court trial judge who granted Pierre's motion for a new trial. I do not doubt that retrial of this case by defense counsel armed with the ample evidence of C.C.'s lack of veracity about sexual abuse, which was discovered after Pierre's trial, would probably produce an acquittal. I believe that a reasonable jury would harbor reasonable doubt about Pierre's guilt when confronted with the evidence discovered post-trial that C.C. is a habitual liar about the precise kind of

---

[37] <u>State v. Pierre</u>, 2009 WL 3162246, at *8.

circumstances giving rise to the charge against Pierre, especially in the absence of any physical evidence of his guilt.  I would not be troubled if some legal authority superior to myself found some sound legal basis for providing petitioner with relief.

However, it is not my province to make new law that would be contrary to Fifth Circuit precedent, speculating that the current or any reconstituted Supreme Court would probably adopt Justice Sotomayor's view in Cash v. Maxwell discussed above.  From my vantage point at the lowest rung of the federal judiciary, I am constrained both by the precedent cited above and by the will of Congress expressed in the AEDPA to conclude that the decision of the Louisiana Supreme Court to reinstate Pierre's conviction and sentence was neither contrary to nor involved an unreasonable application of clearly established United States Supreme Court or Fifth Circuit precedent.  Accordingly, IT IS RECOMMENDED that Pierre's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

Given the troubling circumstances of this case, IT IS FURTHER RECOMMENDED that, whether or not the reviewing district judge adopts this RECOMMENDATION, a Certificate of Appealability be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[38]

New Orleans, Louisiana, this _____31st_____ day of October, 2016.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[38]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.